UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON C. KAELIN,<br><br>               Plaintiff,<br><br>v.<br><br>RANDY BLADES, BRISTY DELAO, DR. DAVID AGLER, and DR. KENNETH KHATAIN<br><br>               Defendants. | Case No. 1:15-cv-00065-REB<br><br><br>**INITIAL REVIEW ORDER OF AMENDED COMPLAINT AND ORDER REASSIGNING CASE** |

Pending before the Court is Plaintiff's Amended Prisoner Complaint (Dkt. 11). As with initial complaints, the Court is required to review the amended complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**REVIEW OF AMENDED COMPLAINT**

The legal theories and the factual underpinnings for the Amended Complaint closely parallel those of the original complaint.[1] The only crucial difference between the

---

[1] An earlier lawsuit alleging similar theories and causes of action was dismissed as a result of Plaintiff's inability to properly serve certain defendants and for failure to state a claim against other defendants, on February 3, 2015. *See Kaelin v. Thacker, et al,* Civil Case No. 1:14-cv-00275-REB. This dismissal was without prejudice. (Dkt. 18 at 2).

two documents is that since the filing of the original complaint, the Plaintiff has been transferred from the Idaho State Correctional Center ("ISCC"), a close, medium, and minimum security facility, to the Idaho Maximum Security Institution ("IMSI"). This necessitated an amendment seeking to add two new defendants—Alberto Ramirez, the Warden of IMSI, and Dr. Scott Eliason, Plaintiff's doctor at IMSI.[2] In his Amended Complaint, Plaintiff alleges that he is still not receiving the medications and psychiatric care which a state court judge ordered him to receive for the duration of his incarceration. Therefore, for the reasons set forth in the Court's Original Review Order (Dkt. 8), the Court will allow the claims for deliberate indifference and state law claims for medical negligence to proceed against Defendants Ramirez and Eliason.

## ORDER TO SHOW CAUSE ON PRELIMINARY INJUNCTION

Also pending is Plaintiff's Motion for an Order to Show Cause for a Preliminary Injunction (Dkt. 17). In this motion, Plaintiff asks this court for a preliminary injunction 1) directing Defendants to provide him with certain psychotropic medications outlined in a state court order of January 27, 2012 and 2) directing the defendants to house Plaintiff in the "BHU," or Behavioral Health Unit. Dr. Kaelin did not file a response to this motion and Warden Blades filed his response on July 16, 2015 and the motion is now ripe as to these defendants. However, Plaintiff is no longer being housed at ISCC. Therefore, even if the Court were to determine that injunctive relief is warranted, Warden

---

[2] Because the original defendants had not waived service or answered at the time Plaintiff filed his amended complaint, he did not need to seek permission to do so under Rule 15.

Blades is no longer the party ultimately responsible for the conditions of Plaintiff's confinement.

It is more sensible, therefore, to defer consideration of the Motion for An Order to Show Cause until Warden Ramirez and Dr. Eliason have had a chance to respond to it. However, Defendants Ramirez and Eliason have not yet been served with process in this case. "Owing to the peculiar function of the preliminary injunction, it is not necessary that the pleadings be perfected, or even that a complaint be filed" before the Court can adjudicate Plaintiff's motion. *National Organization for Reform of Marijuana Laws v. Mullen*, 608 F.Supp. 945, 950 n. 5 (N.D. Cal. 1995). Nonetheless, adequate notice is crucial under Rule 65(a)(1) of the Federal Rules of Civil Procedure, and it is not clear whether Eliason and Ramirez have been provided with notice of the request for an injunction. A letter from Plaintiff dated June 9, 2015 (Dkt. 13) indicates that Plaintiff informally provided a copy of the Amended Complaint to the new defendants; however this was approximately two weeks before the request for an injunction was filed.

The Court notes, however, that ISCC and IMSI are both divisions of the Idaho Department of Corrections,[3] and that in most prisoner litigation cases IMSI employees are represented by the same attorneys who have appeared on behalf of Warden Blades in this case. Further, to the Court's understanding from other cases, the medical providers at IMSI are employees of Corizon Medical Services, typically represented by the same law

---

[3] The State of Idaho took over the operations of ISCC from the Correction Corporation of America on July 1, 2014. *See,* http://www.idoc.idaho.gov/content/locations/prisons/iscc_icc.

firm that has appeared on behalf of Dr. Khatain. Therefore, the Court will give the attorneys of record an opportunity to determine if they will be representing Dr. Eliason and Warden Ramirez along with the current defendants, and if so, to decide whether they wish to waive service. Once the attorneys of record have had a chance to make those determinations, they shall have an additional twenty days thereafter to file a response to the request for an injunction on behalf of Warden Ramirez and Dr. Eliason. Assuming the Court is correct regarding the relationships between the attorneys of record and Eliason and Ramirez, service of this Order through the ECF system shall constitute notice of the request for an injunction as to Eliason and Ramirez.

A few additional words may be helpful going forward. In his response to the request for an injunction, Warden Blades characterized this case as a mere disagreement between an inmate and his prison medical providers as to the appropriate course of treatment. That may well turn out to be true, but at first blush, on an undeveloped record, the Court notes that certain facts set this case apart from the typical case involving a disagreement about appropriate medical treatment. First, a state court ordered in 2012 that Plaintiff receive several different kinds of psychotropic medication as well as therapy for the duration of his incarceration. Second, the psychological report submitted with Plaintiff's complaint indicates he is unlikely to pose a danger to himself or others if he takes these medications, though it is not clear to what extent the state court judge was

relying on this particular report.[4] Plaintiff asserts that the defendants have been in violation of this order since he arrived at ISCC, despite having been informed of the existence of the state court order. He further asserts that that these violations have continued since he was transferred to IMSI. However, he does not identify what specific medications and therapies have been lacking, or what, if anything, has replaced them. Warden Blades says on the other hand, but also without specification, that Plaintiff has been receiving medical treatment and points out that over three years have passed since he underwent the assessment that was the basis for the state court order. (Presumably Warden Blades is not suggesting that the latter fact is a basis to disregard the state court's Order, if Plaintiff is correct as to its requirements.)

In summary, neither party has explained what medications and treatment Plaintiff is, in fact, receiving. Therefore, going forward, the parties' submissions should include information about the following: 1) the status and applicability of the 2012 state court order and the psychological evaluation or evaluations upon which it was based, 2) modifications or requests for modifications to that order, if any; 3) the medications, therapy, and other treatment Plaintiff has received for his psychological conditions since

---

[4] The report attached to Plaintiff's complaint was prepared by a Carl Haugen, PhD, and the state court order references testimony of two different providers, Thomas Lawrence, M.D. and Sharon McCahon, L.C.S.W. Though it is not clear to what extent the Haugen report informed the state court judge's decision, the state court's order does specifically state that "The Defendant suffers from a severe and reliably diagnosable mental illness or defect resulting in the Defendant's inability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." (Dkt. 11-1 at p. 6). The order also specifically found that the illness was treatable.

his transfer to IMSI, and 4) how those treatments are designed to meet the substance of the 2012 state court order.

Finally, the Court notes that not all parties who have appeared thus far have consented to the jurisdiction of a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Once the additional defendants are served, they too would need to be afforded an opportunity to consent to the jurisdiction of a magistrate judge, a process that can take up to sixty days. Because United States Magistrate Judges cannot adjudicate motions for injunctive relief unless all parties consent, 28 U.S.C. § 636(b)(1)(A), it appears that the timely and efficient resolution of Plaintiff's motion would be better served by reassigning this case to a United States District Judge.

## ORDER

1. Plaintiff may proceed on his deliberate indifference and state law negligence claims against Defendants Ramirez and Eliason.

2. Defendants Ramirez and Eliason shall be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within **10 days** of the date of this Order. Alternatively, Defendants may file a Notice of Appearance indicating that service is waived. If Defendants choose to return the Waiver of Service of Summons or file a Notice of Appearance, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of

    Court shall forward a copy of the Amended Complaint (Dkt. 11), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

    a.    Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706 on behalf of the IDOC Defendant Alberto Ramirez.

    b.    Mary Karin Magnelli, Office of the Attorney General, Idaho Department of Corrections, P.O. Box 83720, Boise, ID 83720-0018, on behalf of the IDOC Defendant Alberto Ramirez.

    c.    Kevin West, Parsons Behle & Latimer, 800 West Main Street, Suite 1300, Boise, Idaho 83702, on behalf of CMS/Corizon Defendant Dr. Scott Eliason.

    d.    Dylan Eaton, Parsons Behle & Latimer, 800 West Main Street, Suite 1300, Boise, Idaho 83702, also on behalf of the CMS/Corizon Defendant Dr. Scott Eliason.

3.    Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should, **within 10 days of the date of this order,** file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

4.    Eliason and Ramirez shall file their responses to Plaintiff's Motion for an

Order to Show Cause (Dkt. 17) within **thirty days of the date of this Order.** Plaintiff's optional reply brief shall be due **fourteen days thereafter**.

5. All directives and orders identified in the Court's original Initial Review Order of May 26, 2015 shall remain in place.

6. This case is hereby **REASSIGNED** to the Honorable Edward J. Lodge, United States District Judge.

DATED: **August 13, 2015**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge